IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID MOOREHOUSE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:04-cv-807-WKW |
| ) | (WO) |
| INKINE PHARMACEUTICAL, ) | |
| COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Moorehouse ("Plaintiff") commenced this civil action on August 27, 2004, against his former employer, Inkine Pharmaceutical Company, Inc. ("Defendant"), alleging a claim of discriminatory discharge under the Age Discrimination in Employment Act of 1967 ( "ADEA"), 29 U.S.C. §§ 621 *et seq*. (Doc. # 1, Compl.) Defendant filed its Answer on October 15, 2004. (Doc. # 8.)

This cause is before the Court on the Defendant's Motion for Summary Judgment filed on September 1, 2005. (Doc. # 13.) Plaintiff filed a response in opposition to the motion on September 21, 2005 (Doc. # 16) and Defendant filed a reply thereto on September 28, 2005 (Doc. # 20). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court finds that the motion for summary judgment is due to be GRANTED.

**I. FACTS AND PROCEDURAL HISTORY**

The Court has considered all deposition transcripts, affidavits and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

From October 1, 2002, to September 5, 2003, Plaintiff was employed by Defendant as one

of its District Sales Managers.[1]  Prior to Plaintiff's hiring, Jonathan Hess ("Hess"), Defendant's Director of Sales and Plaintiff's direct supervisor, interviewed Plaintiff and recommended him for the position.  Robert Apple ("Apple"), Defendant's Chief Financial and Operating Officer, made the decision to hire Plaintiff based upon Hess' recommendation.

Defendant engages in the sale of pharmaceutical products nationwide.  It employs three District Sales Managers: one for each of the southeast, northeast and western regions.  Plaintiff was hired as the District Sales Manager for the southeast region.[2]  As District Sales Manager, Plaintiff was responsible for mentoring and coaching his subordinate sales representatives, and developing business plans and goals for them.  Plaintiff also had the responsibility of conducting field rides with the sales representatives on a regular basis to observe their sales methods and provide analysis for improvement.  Field rides were a significant part of Plaintiff's job, generally requiring four out of five days per week.

Plaintiff's employment stint with Defendant was short but eventful.  Within his first month of employment, Plaintiff was disciplined by Hess for acting inappropriately at a sales meeting.  Specifically, in late October 2002, after having consumed an excessive amount of alcohol in a social setting with other personnel, Plaintiff had an argument with Leslie Tatum ("Tatum"), one of his sales representatives.  The following day, Tatum complained to Hess about the event, stating that Plaintiff, while he was intoxicated, inappropriately threatened her job.  Hess discussed Tatum's complaint with Plaintiff and issued a verbal warning.[3]

---

[1] Plaintiff was 47 years of age when he was hired.

[2] Plaintiff's territory consisted of Texas, Louisiana, Mississippi, Alabama, Tennessee, North Carolina, South Carolina, Georgia, Florida and Puerto Rico.

[3] According to Hess, Plaintiff did not deny this incident.

Three months later, in January 2003, Hess received another complaint regarding Plaintiff. Terry Oberembt ("Oberembt"), a sales representative outside of Plaintiff's territory, informed Hess of a complaint regarding Plaintiff that Oberembt received from Ashley Wilson ("Wilson"), one of Plaintiff's subordinate sales representatives.  Hess contacted Wilson and she explained that, during the October 2002 sales meeting, while she was socializing with Plaintiff and others, Plaintiff made an inappropriate sexual comment to her, stating that her "breasts [were] hanging out of her blouse."[4] Hess spoke to other employees about this incident and one of the employees confirmed that Plaintiff made a comment to Wilson about her chest.  As a result of this incident, Hess placed Plaintiff on probation for a period of six months.

On July 10, 2003, Plaintiff's probation ended.  Shortly thereafter,[5] at a dinner in Dallas, Texas, Hess informed Plaintiff that his probation ended and that there had been no further complaints.[6]  Hess also told Plaintiff that the "comments were a thing of the past and not to worry about them anymore." (Doc. # 16, Ex. 1, Pl.'s Aff. at ¶ 18.)  Hess further told Plaintiff that he was impressed with Plaintiff's determination and work ethic throughout the probation.

Later in July 2003, Plaintiff had a meeting with Hess and Apple.  The purpose of the meeting

---

[4] This statement is recited from Plaintiff's deposition testimony.  (Doc. # 20, Ex. A, Pl.'s Dep. at 70.)  Hess disputes Plaintiff's account of this event and asserts that, according to Wilson, Plaintiff stated that her "tits [were] hanging out of her blouse."  (Doc. # 14, Ex. 1, Hess Decl. at ¶ 7.)  Notably, Plaintiff asserts that the statement "had been taken out of context."  (Doc. # 16, Ex. 1, Pl.'s Aff. at ¶ 14.)

[5] It is unclear precisely when this meeting occurred.  Plaintiff testified that the meeting occurred in June of 2003 after his probation ended.  (Doc. # 20, Ex. A, Pl.'s Dep. at 111.)  However, Plaintiff's probation did not end until July 10, 2003.  (*See id.*) ("[M]y probation was . . . 180 days . . . from January 10th [2003.]")

[6] As it is required to do, the Court has accepted Plaintiff's deposition and affidavit testimony as true and has viewed the evidence presented on the motion for summary judgment in the light most favorable to Plaintiff.  However, the Court notes that Defendant submitted evidence indicating that Hess received several complaints from sales representatives in Plaintiff's region during Plaintiff's probation.  (Doc. # 14, Ex. 1, Hess Decl. at ¶ 8.)  These complaints cover a variety of issues, including accounts that Plaintiff smelled of alcohol during one field ride and failed to present himself professionally at doctors' offices on field rides.  (*Id.*)

was to review Plaintiff's job performance. At the meeting, Hess and Apple told Plaintiff that they had not received any complaints about his performance and that he had the only district in the country that was operating within the allotted budget. Hess and Apple praised Plaintiff for his work and told him that they were pleased with his performance.

On July 14, 2003, Christine Williams ("Williams"), one of Plaintiff's sales representatives, complained to Hess about Plaintiff's failure to conduct a field ride with her in New Orleans, Louisiana, on July 10, 2003.[7] Plaintiff, however, submitted a monthly activity report to Hess indicating that he worked with Williams in New Orleans on that date.

The following month, in August 2003, Hess received information from Plaintiff's subordinate sales representatives indicating that Plaintiff failed to attend scheduled field rides. Specifically, Danielle Shrader ("Shrader") complained that Plaintiff failed to work with her on August 12, 2003; and Glory Ann Zapata ("Zapata") complained that Plaintiff failed to work with her on August 19, 2003, and only worked a half-day with her on August 22, 2003. Hess reviewed Plaintiff's monthly activity report for August 2003 and it indicated that Plaintiff worked with Shrader on August 12, 2003, and worked with Zapata from August 19, 2003, through August 22, 2003.

Due to the inconsistencies between Plaintiff's reports and the sales representatives' statements, Hess concluded that Plaintiff had submitted false documentation to the Defendant. Hess decided that Plaintiff should be terminated and made his recommendation of termination to Apple. Apple agreed with Hess' recommendation and approved the termination decision.

On September 5, 2003, Plaintiff was contacted by Hess and informed of his termination. Hess told Plaintiff that he was fired for falsifying a monthly report in relation to his whereabouts on

---

[7] Plaintiff confirms this complaint. (Doc. # 20, Ex. A, Pl.'s Dep. at 77.)

a particular day. Plaintiff denies that he falsified any report.

On August 27, 2004, after timely filing an EEOC charge and receiving his Notice of Right to Sue, Plaintiff timely filed the instant action against the Defendant. (Doc. # 1.)[8] According to the Complaint, as amended, Plaintiff alleges that he was terminated based on his age in violation of the ADEA and seeks back pay, front pay, attorney fees, and an unspecified amount of compensatory damages. (Doc. # 5.)

## II. JURISDICTION AND VENUE

Because this case arises under the ADEA, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing

---

[8] Plaintiff alleges that he has timely exhausted his administrative remedies prior to the initiation of this lawsuit, and Defendant does not dispute this allegation.

the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

The Defendant moves for summary judgment in its favor on Plaintiff's discriminatory discharge claim.  In so doing, Defendant argues that there is no genuine issue as to any material fact and that it is entitled to judgment in its favor as a matter of law.  Plaintiff opposes Defendant's motion arguing that questions of fact exist and the case must proceed to trial.  The Court has considered all arguments proffered by the parties and concludes that Plaintiff's discriminatory discharge claim does not survive summary judgment.

The ADEA prohibits an employer from failing or refusing to hire any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges

of employment because of such individual's age; the protected class under the ADEA includes individuals over the age of 40. *See* 29 U.S.C. § 623(a)(1). An employee bringing a claim under the ADEA must prove intentional discrimination by the employer through one of two methods: presenting direct evidence of discriminatory intent, or presenting circumstantial evidence of discrimination by satisfying the four-prong analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. Of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981).[9] Because Plaintiff has not presented any direct evidence to support his claim of discrimination, the Court will only address his circumstantial evidence of age discrimination.

To establish an ADEA claim by using circumstantial evidence, the employee has the initial burden of showing by a preponderance of the evidence that a *prima facie* case of discrimination exists. *Young v. Gen. Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988). The essence of the *prima facie* case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the factfinder that the employer used prohibited criteria in making an adverse decision about the employee. The elements of a *prima facie* case of discrimination under the ADEA will vary depending on what theory the employee uses to prove his case. *See, e.g., Benson v. Tocco*, 113 F.3d 1203, 1208 (11th Cir. 1997) (listing elements of a *prima facie* case for reduction in force claim); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (listing elements of a *prima facie* case for termination and failure to hire claims). If established, the *prima facie* case raises a presumption that the employer is liable to the employee under the ADEA. *Burdine*, 450 U.S. at 254.

---

[9] *See Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525 (11th Cir. 1985) (adopting this *prima facie* analysis for claims of age discrimination under the ADEA ).

"Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

Once the employee has established a *prima facie* case of discrimination, the employer must articulate legitimate, nondiscriminatory reasons for its employment decision. *See id.* at 1564 (citing *Burdine,* 450 U.S. 248). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not persuasion, and consequently the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).

When the employer has come forward with a nondiscriminatory reason for its actions, the "presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quotation omitted). The employee may meet this burden by persuading the court either directly, by showing that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the proffered reason for the employment decision is not worthy of belief. *Burdine*, 450 U.S. at 256; *see also Young*, 840 F.2d at 828. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

As stated above, the *prima facie* case of discrimination under the ADEA will differ somewhat given the nature of the adverse action alleged. The *prima facie* case for a discriminatory discharge case, such as this one, requires Plaintiff to prove that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. *Chapman*, 229 F.3d at 1024. In examining Plaintiff's discriminatory discharge claim, the Court will assume for purposes of summary judgment that he has established a *prima facie* case.[10]

The burden now shifts to Defendant to produce evidence sufficient to indicate that it actually discharged Plaintiff because of one or more legitimate, nondiscriminatory reasons. In rebuttal, Defendant argues that its proffered reasons for Plaintiff's discharge were his inappropriate conduct, poor performance, and falsification of company records. Defendant presented evidence, in the form of declarations from Hess and Apple, that Plaintiff was terminated because two complaints of inappropriate comments were made against him, numerous complaints of his poor performance as manager were made against him, and he had submitted a monthly activity report which listed field rides with sales representatives on days when the representatives had complained that he failed to attend the scheduled field rides. (Doc. # 14, Ex. 1, Hess Decl. at ¶ 11; Ex. 2. Apple Decl. at ¶ 6.)

Without question, poor performance in management duties and lack of truthfulness on reports are legitimate, nondiscriminatory considerations. *See Kelliher v. Glickman*, 134 F. Supp. 2d 1264, 1274-75 (M.D. Ala. 2001), *aff'd*, 313 F.3d 1270 (11th Cir. 2002). Accordingly, the Court concludes that the foregoing evidence satisfies Defendant's burden at the intermediate stage of the *McDonnell*

---

[10] Plaintiff was over the age of 40 when he was terminated from the position and he was replaced by an individual who was 28 years old. (*See* Doc. # 20, Ex. A, Pl.'s Dep. at 59, 135; Doc. # 16, Ex. 1, Pl.'s Aff. at 33.)

9

*Douglas* framework. Thus, Plaintiff's discriminatory discharge claim comes down to the third and final stage of *McDonnell Douglas*: pretext.

At the pretext stage, in order to survive summary judgment Plaintiff must provide sufficient evidence to allow a reasonable factfinder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Plaintiff may do this (1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). "In cases brought under the ADEA, the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment." *Young*, 840 F.2d at 828 (citation omitted).

As a threshold matter, it should be noted that in cases such as this,

> federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, not matter how mistaken the firm's managers, [federal anti-employment discrimination statutes do] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Id*. (quoting *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991) (further citations omitted) (bracketed material added). Further, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. Thus, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id*.

To rebut Defendant's proffered nondiscriminatory reasons for his discharge, Plaintiff refutes

Defendant's reasons with his own testimony. Plaintiff denies that he made any inappropriate comments, argues that his work performance was not poor, and contends that he did not falsify his monthly activity report. The Court is mindful that Plaintiff bears the burden of offering enough probative evidence so that a reasonable jury might conclude that Defendant's reasons for termination were a pretext for age discrimination. *See Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 658 (11th Cir. 1998). After a painstaking review of the record, the Court finds that Plaintiff has not made this requisite showing.

Many of the particulars of Plaintiff's arguments largely ignore, rather than meet head-on, the specific reasons Defendant proffered for terminating his employment. Plaintiff denies that he made any inappropriate comments, but presents no evidence indicating that the complaints were not made. Moreover, Plaintiff argues that his August monthly activity report was not falsified but fails to present evidence which supports his argument. For example, Plaintiff contends that the August 12, 2003, entry on his monthly activity report simply indicates the reason he was in Jacksonville, Florida, and maintains that a review of his August expense report reveals "no indication that he met with . . . Shrader on the 12th day of August, 2003." (Doc. # 16, Pl.'s Resp. to Mot. Summ. J. at 8.) However, the actual monthly activity report explicitly states that Plaintiff conducted a *field ride* with *Shrader* in *Jacksonville, Florida*, on *August 12, 2003*; the report does not state that Plaintiff merely arrived in Jacksonville. (Doc. # 14, Ex. 1B) (emphasis added). Further, the expense report buttresses the argument that Plaintiff did not conduct a field ride with Shrader on August 12, 2003, despite his representation to the contrary in the monthly activity report. (Doc. # 16, Ex. 2.) Hence, the evidence Plaintiff presents does not question the veracity of Defendant's proffered

nondiscriminatory reason for his termination, rather, it inexplicably *supports* the reason.[11]

In addition, Plaintiff failed to present any circumstantial evidence of Hess' or Apple's discriminatory animus toward him due to Plaintiff's age. It is clearly established that comments or remarks that suggest discriminatory animus can be sufficient circumstantial evidence to establish pretext. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998). Here, Plaintiff testified that he never heard Hess nor Apple make any specific comments about his age. (Doc. # 20, Ex. A, Pl.'s Dep. at 138.)

Moreover, Plaintiff claims that he was replaced by a "28-year old man who was a college roommate of another district manager" and he believes that the roommate relationship "helped" in the selection. (Doc. # 20, Ex. A, Pl.'s Dep. at 153.) Such favoritism based on a "roommate relationship" further undermines Plaintiff's claim that Hess and Apple had discriminatory animus toward him due to his age.

It is well-established that in cases such as this one, "[w]here the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987) (citations omitted). Accordingly, the Court finds that Plaintiff has failed to produce sufficient evidence establishing that Defendant's proffered nondiscriminatory reasons were pretextual, and therefore concludes that Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

---

[11] Apparently, Plaintiff fails to realize that stating that he conducted a field ride with Shrader on the report, although he clearly did not do so, is a falsification.

## V.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendant's motion for summary judgment (Doc. # 13) is hereby GRANTED.

It is further ORDERED that the pretrial conference set for September 21, 2006, is CANCELED.

The Clerk of the Court is hereby DIRECTED to remove the above-styled case from the November 6, 2006, trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 19th day of September, 2006.

                                    /s/  W. Keith Watkins
                                UNITED STATES DISTRICT JUDGE